# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TOMMIE LEE CULLAR,**

              **Plaintiff,**

**-vs-**                                                   **Case No.  6:14-cv-483-Orl-28DAB**

**CITY OF ORLANDO, FLORIDA, THE
CENTER FOR DRUG FREE LIVING,
BUDDY DYER, OREN HENRY, DICK
JACOBS, SUSAN HEISKELL, PHIL
TOAL, MAYANNE DOWNS, PAUL
AUSLEY and SCHARLENE AHMED,**

              **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    FOR LEAVE TO PROCEED IN FORMA PAUPERIS/AFFIDAVIT OF INDIGENCY (Doc. No. 2)
>
> **FILED:**      **March 24, 2014**
> _____
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED** and Plaintiff's Complaint be **DISMISSED** with leave to amend.

      Plaintiff Tommie Lee Cullar, proceeding *pro se*, asserts civil rights claims against the City of Orlando, City officials, and other individuals connected to a transitional housing program in Orlando that serves people with HIV/AIDS. Plaintiff asserts claims against these Defendants for his suspension from the housing program, allegedly in violation of his constitutional rights and the Americans with

Disabilities Act. Doc. 1.[1] Because the Court finds that Plaintiff fails to state a claim against these Defendants, it is respectfully **RECOMMENDED** that Plaintiff's Complaint be dismissed with leave to refile a direct action against the Center for Drug-Free Living (only) for (alleged) violation of the HUD regulations governing termination of benefits.

### I. Standard for Application to Proceed In Forma Pauperis

Upon an affidavit of indigency, any court of the United States may authorize a party to proceed *in forma pauperis*. 28 U.S.C. § 1915(a). In forma pauperis proceedings are governed by Title 28, United States Code, Section 1915. The statute provides that "any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding . . . without prepayment of fees or security therefor, by a person who submits an affidavit . . . that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a). When considering a motion to proceed in forma pauperis pursuant to this statute, the first determination for the court " 'is whether the statements in the affidavit satisfy the requirement of poverty.' " *See Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (quoting *Watson v. Ault*, 525 F.2d 886, 891 (11th Cir. 1976)).

If the affidavit is "sufficient on its face to demonstrate economic eligibility," the court should first docket the case and then determine, pursuant to 28 U.S.C. § 1915(e)(2), whether the asserted claim is frivolous or fails to state a claim. *See Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (quoting *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976). In reviewing an application to proceed *in forma pauperis,* the Court may dismiss the case or refuse to permit it to continue without payment of fees "if the court determines that . . . (B) the action or appeal- (I) is

---

[1]The organization of the Complaint makes it difficult to identify with certainty what grounds Plaintiff wishes to rely on for his claims. Plaintiff makes clear that he is dissatisfied with the handling of housing benefits he claims from December 2012 to November 2013. However, it is not clear whether he is asserting a substantive claim for denial of benefits under some statute (or other basis) or whether his claim is for redress of procedural rights. It is also unclear which of the many events he describes (various benefit denials, suspensions and failures to review) he is actually relying on.

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

The standard of review for dismissals pursuant to 28 U.S.C. § 1915(e)(2) tracks the language for dismissals under Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To survive dismissal for failure to state a claim under this standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has provided guidance on what constitutes a "well pled" complaint, requiring a plaintiff to supply more than just any conceivable set of facts tending to support a claim, but "enough facts to state a claim to relief that is plausible on its face." *Id.* The Supreme Court has explained the two prong approach to evaluating whether a complaint meets this standard:

> As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (*citing Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or " a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with "a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).
> ***
> But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. Though *pro se* pleadings are held to a less strict standard than those drafted by lawyers and are construed liberally, *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008), the Court does not have "license to serve as de facto counsel for a party" or to "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. County of Escambia, Fla*., 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds as stated in Young v. Nichols*, 398 Fed. Appx. 511 n.2 (11th Cir. 2010).

## II. Background Facts and Applicable Regulatory Provisions

Plaintiff asserts civil rights claims against the City of Orlando, several City officials, the Center for Drug Free Living-CENTAUR[2] (the "Center"), a HUD official, and other individuals connected to operation of a federal Housing and Urban Development ("HUD") initiative implementing the Housing Opportunities for Persons with AIDS ("HOPWA") program in Orlando, which provides federal funding for substance abuse treatment, rent, and utilities for individuals with AIDS or HIV pursuant to the HOPWA Act, 42 U.S.C. § 12901 *et seq*. Plaintiff has sued several individual Defendants associated with the Center, which manages the transitional housing and

---

[2]The Center For Drug-Free Living, Inc. merged with CENTral Florida AIDS Unified Resources, Inc. (CENTAUR) in 2002. Through this merger, all HIV/AIDS services previously provided by either The Center or by CENTAUR have been combined into one department under the organizational umbrella of The Center For Drug - Free Living, Inc. Founded in 1986, CENTAUR was the first AIDS Service Organization of its kind in the Central Florida area providing supportive services to HIV/AIDS clients in Lake, Orange, Osceola and Seminole Counties. Services include individual, group, couples and family mental health counseling and psychiatric services, provision of food, clothing and housing assistance and HIV/AIDS prevention education and outreach. http://www.cfdfl.com/about-us/history (Visited on April 4, 2014). The Court will refer to the merged program collectively as "the Center."

substance abuse programs; the director of the City of Orlando's Community Development Department, which oversees HOPWA activities; the City's mayor and city attorney; as well as the field office director for HUD who oversees operation of HUD-HOPWA programs in the Orlando District.  Doc. 1 ¶¶ 4-12.

Plaintiff, who is HIV/AIDS positive and eligible to receive HOPWA services, alleges he was removed from transitional housing at a local hotel on December 29, 2012 in spite of his request for a four-day extension of his stay.  Doc. 1 ¶¶ 14-15.  Plaintiff's request was denied by two Center employees, Phil Toal and Susan Heiskell, and, on February 6, 2013, Plaintiff allegedly filed a grievance against them. Doc. 1 ¶ 16.  Plaintiff was again denied rental assistance on March 11, 2013 while a tenant at a different hotel, allegedly because he had filed the prior grievance.  Doc. 1 ¶¶ 19-22.  On August 14, 2013, Plaintiff's services were allegedly suspended for 90 days and he was blocked from emergency housing, substance abuse treatment, and other services available under HOPWA.  Doc. 1 ¶ 24.  When Plaintiff complained to the HUD field office director, he was denied a reprieve.  Doc. 1 ¶ 27.  Plaintiff now asserts § 1983 claims for denial of due process and equal protection under the Fourteenth Amendment, as well as a claim under the ADA.

Attached to Plaintiff's Complaint are exhibits which are apparently notes from the Center staff[3] that assist in fleshing out the sequence of events.  Doc. 1-1 at 2.  It appears that the Center's Program Manager Susan Heiskell received a fax on February 6, 2013 with a grievance from Plaintiff.  Doc. 1-1 at 2.  Center staff noted in a subsequent grievance letter from February 27, 2013, that Plaintiff had requested a meeting with all persons involved in HOPWA services and the City of Orlando in order to express his discontent with his housing opportunities. (By Whitney McInvale on

---

[3]It is not clear if the notes were attached to the August 14, 2013 letter, or if Plaintiff obtained them separately.  Doc. 1-1.  Although there appear to be older notes, a complete set of notes is not attached, and there are no notes from December 2012.

March 4, 2013).       Notes recorded by Susan Heiskell on March 6, 2013, include the contents of

a letter to Plaintiff offering to meet with him:

> Dear Mr. Cullar,
>
> Ms. Scharlene Ahmed, City of Orlando, has advised us that your requested meeting
> with the City of Orlando and HUD Representatives will not take place until you meet
> with Dr. Philip Toal and myself as representatives of CENTAUR.
>
> It is the policy and procedure of CENTAUR, as instructed by HOPWA, to advise
> clients at intake of the Grievance Procedure[4] and I have attached the copy you signed
> at intake stating that you agreed to this.
>
> Our goal is to meet with you and discuss your alleged violations to determine if a
> resolution can be achieved.
>
> Please let us know of some dates and times that you are willing to meet with us here
> at 106 W. Columbia St., Orlando, FL.
>
> Sincerely, Susan Heiskell

Doc. 1-1 at 2.   On March 11, 2013, there were two entries made which report that Center staff did

arrange for Plaintiff to change hotels:

> HCM met with [Client] who claims he is being evicted from the extended stay,
> Howard Vernon Motel, due to nonpayment of weekly fees of $200.00. [Client] stated
> he lost his income on the bus on the way to Walmart. He stated he was juggling
> multiple bags and stuffed his money which totaled between $600-800.00 in which he
> was going to pay for weeks at the Extended Hotel as well as food items. CM inquired
> about the Insurance company working with the Rice Company and if he had received
> his payout. [Client] stated they made another offer but it was not to his aggerance [sic].
> [Client] stated he is awaiting a court date in which he will represent himself in court
> against the rice company. [Client] stated as of March '13 he is receiving his own SSDI
> on the card instead of his mother issuing his fundings.
>
> [Client] was approved for STRUM assistance at ITS[In Town Suites]-Lee Rd from
> today, 3/11/13 to 4/5/13.   CM had [Client] sign Hotel Agreement and [Client] is
> expected to bring updated SS Award Letter by 3/15/13. --wm

Doc. 1-1 at 3.   On the same day, Susan Heiskell noted:

---

[4]Plaintiff has not provided the Grievance Procedure with the Complaint.

[Client] presented at CENTAUR this morning requesting assistance with Rent due to "lost of money" he indicated on the Referral Form. The Referral indicates that the client's Income is $913/mo and his rent is $200/week.

PMSH and HCMKJ met with the client. PMSH advised [Client] that she was unsure if it is appropriate to provide case management services at this time due to the Grievance that is still active. [Client] continues to say that he will not talk to CENTAUR about his issue.

PMSH then advised [Client] that Scharlene Ahmed will be consulted as to whether CENTAUR should proceed with case management services at this time. The [Client] was not willing to accept waiting for an answer and said that he would take this as a "no" to his request and he will seek assistance elsewhere.-sh

Doc. 1-1 at 2.  A portion of the Center staff's notes from March 12, 2013 indicate:

CM assured [Client] that while each [Client]'s situation is dealt with individually, we must work within the parameters and established resources/relationships built between CENTAUR and ESH locations such as ITS. [Client] recognized this but questioned CM about the financial aspect stating that on the ITS bill he saw $225.00 when the other motel was only $200.00. CM reiterated that ITS is more economical for our agency and that should be none of his concern. CM reminded him that he could have brought his personal items with him to CENTAUR on 3/11 but he chose not to. Regardless, it is not CENTAUR's responsibility or involvement that contributed to his missing items. [Client] then responded by stating that CM, PM-SH, and Dr. Phil Toal's salaries were paid by the same funding that is supposed to assist the HIV population. CM stated this has nothing to do with allocation of funding and that everyone who works gets money taken out and put into a [pool] for the government to allocate to social services etc.  [Client]'s SSDI falls under that as well. CM tried to re-direct the conversation back to the matter at hand and continually told [Client] that if he were to come in last Thurs/Fri which he did not, we would have met him where he was at. [Client] stated he has a real issue with the fact that his legal papers and a $200 weatherproof jacket was taken out of the motel room.

*CM will retrieve Updated 2013 SS Award Letter on 3/15 as well as fill out an ROI for Howard Vernon Motel. --wm

Doc. 1-1 at 3.

Plaintiff also submits as an exhibit a letter from the Center's Housing Office, explaining why

he was denied housing assistance in August 2013:

This letter is written at your request to advise you why you were denied housing assistance on Monday, August 12, 2013.

You have been active in housing case management since November, 2012, and we have assisted you with housing for a minimum of 12 weeks since March 2013. You have been advised that since you have an income, you are able to acquire stable housing so that these episodes of homelessness will cease and then you can better manage your health issues. Your case manager has given you lists of housing opportunities that you can afford but you rejected each opportunity saying that it does not meet your standards.

On Monday, August 12, 2013, you wrote a Letter of Grievance and submitted it to CENTAUR. During a telephone call with Susan Heiskell on Wednesday, August 14, 2013, you were offered the opportunity, per the HOPWA Grievance Procedure, to schedule a meeting with CENTAUR Manager Susan Heiskell, HOPWA Lead Case Manager Karen Jackson, and CENTAUR Clinical Manager Jessica Szymczyk. Ms. Heiskell stated that this would be your opportunity to meet with CENTAUR management so that collectively we can review the situation and discuss with you what opportunities are available to you at this time. You refused the meeting stating that it would be "a waste of your time if the denial would be upheld."

We regret that you are dissatisfied with our decision and we welcome the opportunity to meet with you in person if you change your mind.

Doc. 1-1 at 1. Plaintiff's exhibits do not contain a copy of the Center's grievance procedure.

Under the regulations for HOPWA, grantees such as the Center must provide a process that complies with due process, including notice and an opportunity to be heard, and prompt notification of the decision before termination of assistance, as follows:

(e) Termination of assistance--

(2) Violation of requirements--

(i) Basis. Assistance to participants who reside in housing programs assisted under this part may be terminated if the participant violates program requirements or conditions of occupancy. Grantees must ensure that supportive services are provided, so that a participant's assistance is terminated only in the most severe cases.

(ii) Procedure. In terminating assistance to any program participant for violation of requirements, grantees must provide a formal process that recognizes the rights of individuals receiving assistance to due process of law. This process at minimum, must consist of:

(A) Serving the participant with a written notice containing a clear statement of the reasons for termination;

(B) Permitting the participant to have a review of the decision, in which the participant is given the opportunity to confront opposing witnesses, present written objections, and be represented by their own counsel, before a person other than the person (or a subordinate of that person) who made or approved the termination decision; and

(C) Providing prompt written notification of the final decision to the participant.

24 C.F.R. § 574.310.

### A. Fourteenth Amendment Due Process and Equal Protection Claims

Plaintiff claims his right to equal protection and due process has been violated and that the violation is actionable under § 1983, under the theory that the City and several officials and employees maintained a custom, policy, or practice of denying due process to people with AIDS such as Plaintiff by blocking access and remedies to the grievance/complaint process as set forth in 24 C.F.R. § 574.310.  He also alleges that employees of the non-profit Center and a HUD official  have violated his civil rights by not following the statutory HOPWA grievance procedure.

In order to prevail on a § 1983 claim, Plaintiff must show 1) that he has been deprived of a right created by federal law or under the United States Constitution and 2) that the person or entity which deprived him of the right was acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).  Plaintiff contends that defendants denied him the right to procedural due process and equal protection when they suspended him from the HOPWA program and failed to follow the appropriate grievance/complaint process. The Equal Protection Clause of the Fourteenth Amendment[5] to the United States Constitution states that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, § 1.  To establish an equal protection claim, a plaintiff must show that he was treated differently

---

[5]The court notes that the complaint fails to state any claim arising under the *Fifth* Amendment (*see* Doc. 1 ¶ 31) upon which relief may be granted, because the due process clause of the Fifth Amendment does not apply to state or local governmental actors.  Therefore, Plaintiff's Fifth Amendment claim is without merit and does not warrant further discussion.

from other individuals similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

      1. *Claims against the Center for Drug Free Living, a non-profit recipient of HUD funding*

Plaintiff asserts a claim for failing to use or follow the grievance procedures in terminating his benefits under HOPWA against the individual Defendants associated with the non-profit Center – Dick Jacobs, the Chief Executive Officer; Phil Toal, the Director; and Susan Heiskell, the Program Center Manager in charge of daily operations.   Doc. 1 ¶¶ 4-6.   He specifically alleges these individuals violated his constitutional rights by "refusing" to follow the grievance procedures found in 24 C.F.R. § 574.310 in.   He alleges that, on December 29, 2012, he was removed from transitional housing at a local hotel by Defendants Toal and Heiskell in spite of his request for a four-day extension[6]. Doc. 1-1 ¶ 14.   About a month later, on February 6, 2013, Plaintiff filed a grievance against Toal and Heiskell. Doc. 1 ¶ 16.

On March 6, 2013, Heiskell told Plaintiff that no meeting with OCDD or HUD would take place unless Plaintiff first met with Toal and Heiskell, according to the Center's grievance policy. On March 11, 2013, Plaintiff was again denied rental assistance by Heiskell, allegedly because he had filed the prior grievance, and he was removed from the hotel.   Doc. 1 ¶¶ 19-22.   Heiskell allegedly told Plaintiff that his access to the Center's services was suspended pending a phone call from Ahmed's office to determine if it would be proper for Plaintiff to receive services from the Center after Plaintiff had submitted a grievance regarding the previous issue.   Doc. 1 ¶ 22.   On August 14, 2013, Plaintiff's services were allegedly suspended for 90 days and he was blocked from emergency housing, substance abuse treatment, and other services available under HOPWA.   Doc. 1 ¶ 24. Plaintiff now asserts § 1983 claims for denial of due process and equal protection under the

---

[6]Based on the exhibits to the Complaint, the Center staff notes indicate that Plaintiff continued to receive services at least until August 12, 2013.

Fourteenth Amendment against Heiskell, Toal, and Jacobs for not using a proper grievance process, and against Jacobs as having "final authority" over the Center and supporting the decisions of his subordinates. Doc. 1 ¶ 36.

However, Plaintiff cannot assert a § 1983 claim against a private entity such as the Center or its employees.  Section 1983 requires that a defendant be a person acting "under color of state law" in order to be liable for any constitutional violations alleged. 42 U.S.C. § 1983.  A person acts under color of state law only when exercising power possessed by virtue of state law and made possible because the defendant is "clothed with the authority of state law." *Polk County v. Dodson*, 454 U.S. 312, 317–18 (1981).  "Only in rare circumstances can a private party be viewed as a 'state actor' for [S]ection 1983 purposes."  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).  Plaintiff has failed to allege that the non-profit Center or any of its employees are "state actors" for purposes of bringing a § 1983 suit.

Although there are other cases involving suits by public housing tenants under 42 U.S.C. § 1983 to enforce their rights under the Housing Act, the defendants in these suits are *city* housing authorities, not private non-profit entities, such as the Center here.  *See Hill v. Ogburn*, 812 F.2d 679 (1987) (public housing tenants sued Tallahassee and Ft. Myers' city housing authorities); *Wright v. City of Roanoke Redevelopment & Hous. Auth.*,479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (holding tenants had a private cause of action to enforce limitation on rent charged by city of Roanoke's public housing authority under the Housing Act).  Additionally, at least one other court has found that there is *no private right* of action to enforce provisions of the HOPWA.  *See, e.g., Idaho Aids Foundation, Inc. v. Idaho Housing & Finance Assoc.*, 422 F.Supp.2d 1193, 1202 (D. Idaho 2006) (holding that provision of HOPWA statute requiring recipients of funds under statute to agree to confidentiality of beneficiary information did not create private cause of action enforceable against recipient in § 1983 action).  In the only other (unpublished) case the Court could find construing

§ 574.310, *Cotton v. Alexian Bros. Bonaventure House*, 2003 WL 22110501 (N.D. Ill. Sept. 9, 2003), the district court allowed plaintiffs to bring claims against the non-profit housing entity directly under HOPWA, for the non-profit's failure to establish an appropriate grievance procedure before terminating the benefits of recipients of HOPWA services.

In this case, because Plaintiff has failed to allege that the non-profit Center or any of its employees are "state actors" for purposes of bringing a § 1983 suit, Plaintiff's cannot state a claim against the Center or its employees under § 1983.  It *may* be possible for Plaintiff to state a claim under HOPWA for violation of § 574.310, *if* the district court ultimately decides there is a private right of action to enforce this provision of HOPWA.  *See Cotton v. Alexian Bros. Bonaventure House*, 2003 WL 22110501 at *4 (allowing a claim under § 574.310 without directly addressing the issue of whether a private right of action existed); *cf. Idaho Aids Foundation, Inc*, 422 F.Supp.2d at 1202 (holding plaintiff had failed to show that a private right of action existed under HOPWA to enforce confidentiality provisions).

2. *HUD defendant*

Plaintiff asserts claims against Paul Ausley, the CPD field office director for the United States Department of Housing and Urban Development, which is an executive department of the federal government.  *See* 42 U.S.C. § 3532(a).  Plaintiff alleges that on August 21, 2013, he sent a letter to Ausley regarding the Center's denial of HOPWA housing for him.  Doc. 1 ¶ 25.  Although Ausley allegedly has the authority to investigate the misuse of HOPWA funding and violations committed by grantees who receive HUD funding, he "denied Plaintiff resolution of the issues/violations."  Doc. 1 ¶ 26.  Plaintiff asserts a § 1983 claim against Ausley who "chose to support the other Defendant's violations against Plaintiff, even though Defendant Ausley's position" with HUD as CPD field director allegedly gave him "final authority of oversight and final decisions."  Doc. 1 ¶ 40.

For the reasons similar to those describe in the previous section, Plaintiff cannot sue HUD, a federal agency, or its employees pursuant to 42 U.S.C. § 1983, which requires that a defendant be a "person" acting "under color of state law" in order to be liable for any constitutional violations alleged. 42 U.S.C. § 1983. A person acts under color of *state law* only when exercising power possessed by virtue of state law and made possible because the defendant is "clothed with the authority of state law." *Polk County*, 454 U.S. at 317–18.

Plaintiff cannot bring an action against HUD or Defendant Ausely, a HUD employee, under section 1983 for failure to carry out a statutory duty to enforce *federal regulations* in reviewing a grievance. *See, e.g., Hill v. Ogburn,* 812 F.2d 679, 681-82 (11th Cir. 1987) (holding plaintiffs were not entitled to relief against HUD and its officials for § 1983 claims that officials had failed to carry out their duties to enforce federal restrictions on local housing authorities, seeking damages for failures, and injunction requiring federal officials to monitor and enforce the Housing Act and HUD regulations). When the only relief a plaintiff seeks against a federal defendant is an injunctive order requiring the defendant to do nothing more than obey the law, and the plaintiff has made no showing that a coercive order against the federal defendant is necessary to remedy the local housing agency's conduct, plaintiff fails to state a viable claim against the federal agency or official. *Hill,* 812 F.2d at 682. Here, Plaintiff alleges nothing other than the fact that Ausley chose not to overrule the decision made by the Defendants at the Center, and Plaintiff cannot state a claim against him pursuant to § 1983.

3. *Claims against the City and City Officials*

Plaintiff sued the City of Orlando, the Mayor, and the City Attorney, alleging the City has maintained "a policy, custom, and illegal practice" of denying Plaintiff and other people living with AIDS of due process "by blocking access and remedies to the grievance/complaint process as required in the regulations governing the HOPWA program, at 24 C.F.R. § 574.310(e)." Doc. 1 ¶ 32.

To establish personal liability in a § 1983 action against a state actor in his individual capacity, Plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Although Plaintiff contends he is suing the officials – the Mayor and the City Attorney – in their *individua*l capacities (Doc. 1 at 1), he alleges no specific *individual* action taken by either of them, but rather – by virtue of the offices they hold – that they generally "condoned, supported and became participants in the blocking of the lawful process of resolving Plaintiff's grievance." Doc. 1 ¶ 33. Plaintiff has not alleged that the Mayor or the City Attorney were personally and directly responsible for the purported unlawful conduct which allegedly resulted in a constitutional deprivation; thus, Plaintiff has not alleged a claim for a constitutional violation against these City employees in their *individual* capacities. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Plaintiff's claim is nothing more than a claim against these City officials in their *official capacities*, which is essentially a claim against the City. Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there is no need to bring official-capacity actions against local government officials, because local government units can be sued directly. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. at 166,166 (1985)) (holding where the intended defendant is actually the city, it is redundant to sue both the city and the officers in their official capacity as defendants and the officials should not be named as defendants); *Chappelle v. City of Leeds,* 2013 WL 1278964 (N.D. Ala. March 25, 2013) (dismissing section 1983 claims against city mayor in his official capacity as redundant and unnecessary where plaintiff had also sued the relevant municipality on the same grounds). Thus, Plaintiff's claims against Mayor Buddy Dyer and against City Attorney Mayanne Downs are due to be dismissed.

-14-

Even if Plaintiff could sue the Mayor, when the defendant in a § 1983 civil rights action is the head of the municipality, the suit is effectively an action against the governmental entity he represents and governmental entities cannot be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978). Instead, a municipality may be held liable only for the execution of a governmental policy or custom. *See Monell*, 436 U.S. at 694; *see also Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983.")); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) ("It is well-settled that a municipality can be held monetarily liable only through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,' or 'for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking body.'") (quoting *Monell*, 436 U.S. at 690-91).

A local governing body can be sued directly under section 1983 for monetary, declaratory or injunctive relief when the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body." *Monell*, 436 U.S. at 694. Local governing bodies may also be sued for constitutional deprivations emanating from a "custom" even if a custom is not the product of formal adoption via the body's official decision-making regime. *Id.* at 690–91. To the extent Plaintiff is making a vicarious liability argument against the Mayor or City Attorney in this case – as "condoning" or "supporting" the decisions made by a City employee, such argument is barred by *Monell*, 436 U.S. at 694.

Plaintiff alleges generally that the City has "maintained a policy, custom and illegal practice of denying plaintiff (PLWA's - People Living With AIDS) of due process of law in regards to

blocking access and remedy to the grievance/complaint process as required by law (C.F.R. Title 24 part 574.310)." Doc. 1 ¶ 32. Plaintiff fails to allege the specific "policy, practice, or "custom" of the City that blocks access from the grievance procedure.  Moreover, § 574.310 requires the grant recipient, the Center, to have a grievance procedure that "provides a formal process" that recognizes the rights of individuals receiving assistance to due process of law" which consists of written notice, review of the decision by a person other than the person who made the termination decision, and written notice of the final decision. Section 574.310 does not dictate a specific hierarchy or dictate how the review must proceed.  Plaintiff has notably omitted any discussion of the Center's actual grievance procedure, or a copy of it, from the exhibits submitted with the Complaint.  Plaintiff's § 1983 claims against the City for a "custom or policy" of blocking access in the grievance procedure are due to be dismissed.

4.  *Claims against the OCDD employees*

Plaintiff sued Defendants Henry and Ahmed, two employees of the Orlando Community Development Department, alleging they violated his constitutional rights when they failed to follow the proper grievance system of § 574.310.

Plaintiff alleges that the Orlando Community Development Department ("OCDD") receives and distributes HOPWA-HUD funding for emergency, transitional and short-term housing for people living with AIDS.  Plaintiff alleges that Oren Henry is the Director of OCDD and Scharlene Ahmed is an employee who oversees HOPWA activities.  Doc. 1 ¶¶8, 10.  Plaintiff contends that on March 6, 2013, after his initial grievance was filed, he was informed by a Center employee that Defendant Ahmed would not meet with him until he had met with the Center's director and program manager. Doc. 1 ¶ 18. Plaintiff further alleges he was told by the Center on March 11, 2013 that his access to services was suspended pending a phone call "from Ahmed's office" to determine if it would be proper for Plaintiff to receive services after Plaintiff had submitted a grievance regarding a previous

issue, resulting in blocking of the Center's services to him.  Doc. 1 ¶ 22.  On November 15, 2013, OCDD Director Oren Henry allegedly sent Plaintiff a letter[7] stating that he supported the Center's decision regarding the blocking of services to Plaintiff.  Doc. 1 ¶ 27.  Plaintiff alleges claims against the two employees of the OCDD, Henry and Ahmed, in their individual capacities.

As explained above, § 574.310 of the HOPWA regulations requires the grant recipient, the Center, to have a grievance procedure that provides a formal process based on due process of law, however, § 574.310 does not dictate a specific hierarchy or dictate how the grievance procedure or review must proceed, *i.e.*, via review by individuals at the OCDD – that was merely the route Plaintiff wished to use to appeal his grievance.  Plaintiff has failed to specify the Center's actual grievance procedure or allege how it fails to meet the requirements of § 574.310, but nothing in this Section requires review by the City employees at OCDD.  Thus, Plaintiff cannot state a § 1983 claim against the OCDD employees.

**B. Claims asserted under the Americans with Disabilities Act (ADA)**

Plaintiff alleges a claim for violation of the ADA, 42 U.S.C. 12101(a)(5), and § 12132, against two Center employees, Heiskell, Jacob, for his 90 day suspension, and against two OCDD employees, Henry and Ahmed, as well as the Mayor and the City Attorney, for their failure to stop the suspension.  Doc. 1 ¶¶ 45-51.

The ADA was enacted to provide a national mandate "for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101; *Bledsoe v. Palm Beach County Soil and Water*, 133 F.3d 816, 823 (11th Cir. 1998) (quoting 42 U.S.C. § 12101).  The discrimination that must be eliminated is the discriminatory effect that results because of the disability and the Act should be broadly construed.  *Kornblau v. Dade County*, 86 F.3d 193, 194 (11th Cir. 1996).  Title II of the ADA prohibits discrimination against the disabled in public services.  Pursuant to § 12132, "no qualified

---

[7]Plaintiff has not provided a copy of the Henry letter.

individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To show a violation of Title II, a plaintiff must show that (1) he is a "qualified individual with a disability"; (2) he is being excluded from participation in or being denied the benefits of some service, program, or activity by reason of his disability; and (3) the entity which provides the service, program or activity is a public entity. *Kornblau*, 86 F.3d at 194 (citing *Concerned Parents to Save Dreher Park Ctr. v. City of West Palm Beach*, 846 F.Supp. 986, 990 (S.D. Fla.1994)). A public entity is a state or local government or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131; *see also Schiavo ex. rel. Schindler v. Schiavo*, 403 F.3d 1289, 1293 n. 2 (11th Cir.2005) (noting that the "Supreme Court has repeatedly held . . . that federal money does not transform private persons or entities into state actors").

Plaintiff alleges that he is a person who has AIDS, who is arguably "a qualified individual with a disability." To be a qualified individual with a disability, Plaintiff must show he is "an individual with a disability who, with or without reasonable modifications . . . or the provision of auxiliary aids and services, meets the essential requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). In this case, Plaintiff has stated that he suffers from AIDS and that he is receiving Social Security Disability Insurance. For purposes of this preliminary analysis, the Court will assume Plaintiff can show he is a "qualified individual with a disability."

Plaintiff alleges that he has been denied housing and other services by the Center, and City employees and officials did not take action to stop his suspension from the HOPWA services. However, the main provider of HOPWA services as Plaintiff alleges, is the Center, which is not a

public entity, but a private entity, and cannot be sued under Title II. The receipt of federal money does not transform private entity into public entity subject to Title II of the ADA. *Hawkins v. Hamlet, Ltd.*, 296 Fed. Appx. 918 (11th Cir. 2008) (unpublished).  Similarly, Plaintiff cannot state a claim against HUD under Title II of the ADA because a federal entity such as HUD does not qualify as a "state or local government." *West v. Jackson*, 538 F.Supp.2d 12, 22 (D.D.C. 2008) (holding Title II of the ADA does not create any duties with respect to HUD's investigation of housing complaints; it des not apply to the federal government, only to state and local governments); *Wilson v. Seattle Housing Authority*, 2010 WL 1633323 (W.D. Wash. April 22, 2010) (holding Title II of the ADA was not applicable to HUD because it is a federal government agency) (citing *Cellular Phone Taskforce v. F.C.C.*, 217 F.2d 72, 73 (2nd Cir.2000)).

As to the ADA Title II claim against the only "state of local government" in Plaintiff's suit, the City of Orlando, it is circular for Plaintiff to argue that he has been "denied services" on the basis of his disability when the sole reason he qualifies for the ostensibly "public" service – the Housing Opportunities for People living With Aids program – is because it is specifically designed for people with his specific disability, *i.e.*, people with AIDS.  City officials' failure to stop his suspension cannot be construed as a "program" or "activity" in and of itself.  Plaintiff's Title II ADA claim is due to be dismissed.

### CONCLUSION

It is respectfully **RECOMMENDED** that Plaintiff's Complaint be **DISMISSED** with leave to amend **ONLY** to state a direct claim against the Center for failure to comply with § 574.310, and **not** assert claims against the City, its officials, its employees, or HUD employees.  If Plaintiff does file an amended complaint, he must provide specific details of **the Center's grievance procedure as applied to him** that he alleges were inadequate or failed to comply with § 574.310.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 16, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Unrepresented Party
Courtroom Deputy